UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SASHA KANSHAW,<br><br>*Plaintiff*,<br><br>v.<br><br>WILLIAM PATERSON UNIVERSITY, et al.,<br><br>*Defendants*. | Civil Action No. 18-11758<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

Plaintiff Sasha Kanshaw brings this action under 42 U.S.C. § 1983, alleging that Defendants, police officers in the William Paterson University Police Department, violated her rights under the Fourth and Fourteenth Amendments. D.E. 7. Currently pending before the Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. D.E. 10. The Court reviewed the parties' submissions in support and in opposition[1] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendants' motion to dismiss is **GRANTED in part and DENIED in part.**

---

[1] Defendants' brief in support of its motion will be referred to as "Def. Br.," D.E. 10-1; Plaintiff's opposition will be referred to as "Pl. Opp.," D.E. 13; Defendants' reply will be referred to as "Def. Reply," D.E. 14.

## I. BACKGROUND[2]

Plaintiff is a resident of Hawthorne, New Jersey. FAC ¶ 5. In the early morning on April 10, 2018, Plaintiff noticed a portion of her finger was swollen. *Id.* at ¶ 13. Plaintiff believed the swelling was due to an allergic reaction to medication. *Id.* Plaintiff decided to drive herself to Saint Joseph's Hospital in Wayne, New Jersey, located about five miles away from her home. *Id.* at ¶ 14. On the way, Plaintiff's vehicle ran out of fuel. *Id.* at ¶ 16. She contacted "BMW Assist," a service provided to BMW drivers, and requested roadside assistance. *Id.* at ¶ 17. Shortly thereafter, multiple police vehicles surrounded Plaintiff's vehicle. *Id.* at ¶ 18. Defendant Officer DeSantis approached Plaintiff's vehicle. *Id.* at ¶ 19. DeSantis was allegedly not wearing any police clothing and failed to identify herself as a police officer. *Id.* DeSantis demanded that Plaintiff roll down her window. *Id.* at ¶ 20. Unaware that DeSantis was a police officer, Plaintiff lowered the window only a few inches in order to "protect herself." *Id.* DeSantis allegedly became aggressive towards Plaintiff, and along with the other police officer Defendants, demanded that Plaintiff exit her vehicle. *Id.* at ¶ 21. Plaintiff told Defendants she was suffering an allergic reaction and was going to the hospital. *Id.* at ¶ 22.

Plaintiff alleges that Defendant Officer Hunter proceeded to physically force down Plaintiff's driver's side back window; cut Plaintiff's seatbelt; and, with the help of the other Defendants, remove Plaintiff from the vehicle by pulling her by the hair and grabbing her. *Id.* at ¶ 24. Plaintiff was not free to leave after being forced out of her vehicle and claims that Officer

---

[2] The facts are derived from Plaintiff's First Amended Complaint, D.E. 7 ("FAC"). When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Hunter falsely accused Plaintiff of referring to another officer at the scene as the "n-word[.]" *Id.* at ¶ 26. Plaintiff further alleges that Defendant Sergeant Bardi called for an ambulance so Plaintiff could be taken for a psychological evaluation. *Id.* at ¶ 27. Defendants also had Plaintiff's vehicle towed. *Id.* at ¶ 28. Defendants allegedly followed Plaintiff to the hospital and forcibly placed Plaintiff in a room, without permitting her to leave or obtain medical care. *Id.* at ¶¶ 30, 31. Plaintiff asserts that the hospital staff allegedly ordered the police officers to cease their conduct, and Plaintiff was placed in a regular hospital room, where she was administered Benadryl for the allergic reaction. *Id.* at ¶ 33.

Moreover, Plaintiff claims that when her towed vehicle was recovered, the bumper was removed, a wheel rim was broken, the front hood was damaged, exterior paint was damaged, the driver's seatbelt was cut, and the suspension was damaged. *Id.* at ¶ 34. She also claims that Defendant officers prepared a false police report making untruthful statements regarding Plaintiff and the incident, including Plaintiff kicking DeSantis, spitting in Hunter's face, and possessing Fildena, an illegal substance. *Id.* at ¶¶ 35-37.

Plaintiff filed her Complaint on July 18, 2018, D.E. 1, and Defendants responded with a motion to dismiss, D.E. 4. On September 17, 2018, Plaintiff filed her First Amended Complaint. D.E. 7. Plaintiff asserted three counts pursuant to 42 U.S.C. § 1983 for false arrest (Count I), false imprisonment (Count II), and excessive force (Count III). *Id.* Plaintiff seeks a declaratory judgment that Defendants' actions violated her rights, compensatory damages, reasonable costs and attorneys' fees, and punitive damages. *Id.* at ¶¶ 46, 51, 57. On September 27, 2018, Defendants filed the current motion to dismiss, D.E. 10, Plaintiff filed opposition, D.E. 13, and Defendants replied, D.E. 14. The parties agree that the only issue for the Court to decide is whether Defendants, in their individual capacities, are entitled to qualified immunity. Pl. Opp. at 5; Def.

Reply at 1. Accordingly, the Court limits its review to that issue.

The Court notes that Defendants also moved to dismiss the FAC against them in their official capacities. Def. Br. at 5. While Plaintiff does not expressly concede the issue, Plaintiff does admit that "[t]he *sole issue* to be decided – and the sole argument made as to the claims against the individual defendants in their *individual capacities*, is whether defendants are entitled to qualified immunity." Pl. Opp. at 5 (emphases added). Moreover, Plaintiff does not provide any contrary authority indicating that Defendants can be sued in their official capacities. As a result, the Court grants Defendants' motion to dismiss as to their official capacity argument.

## II.  LEGAL STANDARD

For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If,

4

after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

### III.  ANALYSIS

As noted, Plaintiff asserts her claims pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

To obtain relief under this statute, Plaintiff must establish: (i) that one of his rights secured by the Constitution or laws of the United States was violated; and (ii) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (noting that Section 1983 does not provide substantive rights; rather, it provides a vehicle for vindicating violations of other federal rights).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). In determining whether qualified immunity exists, a court must assess (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right" and (2) "whether the right at issue was 'clearly established' at the time of defendant's alleged

5

misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first[.]" *Id.* at 236. "If the plaintiff fails to satisfy either prong, the defendant is entitled to judgment as a matter of law." *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012) (finding defendant police officers were entitled to qualified immunity at the motion to dismiss stage) (citing *Pearson*, 555 U.S. at 232).

The privilege of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court has "made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that '"insubstantial claims" against government officials [will] be resolved prior to discovery.'" *Pearson*, 555 U.S. at 231-32 (alterations in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, n.2 (1987)). Accordingly, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*). However, "[t]he qualified immunity analysis involves a fact-intensive inquiry that is generally ill-suited for resolution at the pleadings stage." *Janowski v. City of North Wildwood*, 259 F. Supp. 3d 113, 121 (D.N.J. 2017) (quoting *Batiz v. Brown*, No. 12-581, 2013 WL 1137531, at *7 (D.N.J. Mar. 14, 2013)). Therefore, "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint." *Thomas v. Independence Township*, 463 F.3d 285, 291 (3d Cir. 2006). Finally, the party asserting qualified immunity "bears the burden of proving its applicability." *Janowski*, 259 F. Supp. 3d at 122 (citing *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010)).

### A. Plaintiff's Constitutional Violation Allegations

The first prong of the qualified immunity analysis is whether a constitutional violation

occurred. This "is not a question of immunity, but whether there is any wrong to address." *James*, 700 F.3d at 679 (quoting *Ray v. Township of Warren*, 626 F.3d 170, 174 (3d Cir. 2010)) (internal quotation marks omitted); *see also Jones v. Walsh*, No. 15-2629, 2018 WL 1203472, at *4 (D.N.J. Mar. 8, 2018) (citing *Saucier*, 533 U.S. at 201) ("Because the first step of a qualified-immunity analysis is to examine whether the plaintiff has sufficiently alleged that the defendant violated a constitutional or statutory right, that question overlaps with the issue of whether the plaintiff has stated a claim under § 1983."). Here, the FAC alleges that Defendants falsely arrested, falsely imprisoned, and used excessive force against Plaintiff.

### 1. Plaintiff's False Arrest and False Imprisonment Claims (Counts I and II)

The Fourth Amendment protects against unreasonable seizures of the person. *See* U.S. Const. amend. IV. The Fourth Amendment, in turn, is applicable to the States through the Fourteenth Amendment. *Baker v. McCollan*, 443 U.S. 137, 142 (1979). "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." *James*, 700 F.3d at 680 (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995)). Similarly, "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant that arrest." *Groman*, 47 F.3d at 636; *Adams v. Officer Eric Selhorst*, 449 F. App'x 198, 201 (3d Cir. 2011).

With respect to the first element of a false arrest or imprisonment claim, "[a] Fourth Amendment seizure occurs when the government terminates the freedom of an individual through means intentionally applied." *Vargas v. City of Philadelphia*, 783 F.3d 962, 969 (3d Cir. 2015) (citing *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989)). In other words, a seizure occurs "[o]nly when the officer, by means of physical force or show of authority, has in some way

7

restrained the liberty of a citizen[.]" *James*, 700 F.3d at 680 (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991)) (internal quotation marks omitted). The Fourth Amendment, however, "does not protect against all seizures; it only protects against those that are unreasonable." *Vargas*, 783 F.3d at 970 (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). Determining the reasonableness of a seizure requires a court to balance "the need of law enforcement officials against the burden on the affected citizens and consider[ ] the relation of the policeman's actions to his reason for stopping the [individual]." *Baker v. Monroe Township*, 50 F.3d 1186, 1192 (3d Cir. 1995).

Defendants argue they "are entitled to qualified immunity under the first prong of the qualified immunity analysis" because their actions fall within the "community caretaking doctrine" and therefore cannot amount to a violation of Plaintiff's constitutional rights. Def. Br. at 24-25. The community caretaking doctrine "is an exception to the warrant requirement of the Fourth Amendment and allows police with a non-law enforcement purpose to seize or search a person or property 'in order to ensure the safety of the public and/or the individual, regardless of any suspected criminal activity.'" *Vargas*, 783 F.3d at 971 (quoting *United States v. King*, 990 F.2d 1552, 1560 (10th Cir. 1993)). The doctrine is not limitless, however, as the Eighth Circuit has articulated:

> Whether the seizure of a person by a police officer acting in his or her noninvestigatory capacity is reasonable depends on whether it is based on specific articulable facts and requires a reviewing court to balance the governmental interest in the police officer's exercise of his or her "community caretaking function" and the individual's interest in being free from arbitrary government interference.

*Winters v. Adams*, 254 F.3d 758, 767 (8th Cir. 2001) (citing *King*, 990 F.2d at 1560).

In *Vargas*, the plaintiff dialed 911 to seek emergency assistance for her daughter's asthma attack. 783 F.3d at 966. While waiting for paramedics to arrive, the plaintiff and two other individuals placed the plaintiff's daughter in a vehicle and prepared to take the daughter to the

8

hospital themselves. *Id.* Police officers, responding to a report of screaming individuals, allegedly positioned their vehicle so that it blocked the plaintiff's vehicle. *Id.* The officers reportedly ordered everyone out of the vehicle and knowing an ambulance was nearby, instructed the plaintiff and the others to wait for the paramedics. *Id.* at 967. The plaintiff claimed that the officers unreasonably seized her in violation of the Fourth Amendment. *Id.* at 968. The Third Circuit held that "the community caretaking doctrine can apply in situations when . . . a person outside of a home has been seized for a non-investigatory purpose and to protect that individual or the community at large." *Id.* at 972. The *Vargas* court agreed with the defendants' argument that even if there was a seizure, it was reasonable under the community caretaking doctrine. However, the Third Circuit's holding was premised on the following:

> The undisputed facts show that the actions of [the officers] were reasonable. They were responding to a volatile situation which they did not initially know involved a medical emergency, and any brief seizure that may have occurred was a result of the officers' concern for the safety of everyone involved . . . . Once the officers realized [the plaintiff's daughter] needed medical attention, it was reasonable for them to direct [the plaintiff] to wait because an ambulance was within earshot and its arrival was apparently imminent.

*Id.*

Here, Defendants assert that Plaintiff "told them she was suffering from a medical emergency but refused to allow them to help." Def. Reply at 5. Defendants assert that they faced the following decision:

> [Defendants] could either physically remove [Plaintiff] from her vehicle, place her in an ambulance and get her to the hospital where she can receive the medical attention she needs, or they could disregard her medical emergency and allow her to remain in her vehicle on University Drive on a Tuesday morning when classes were in session.

*Id.* Defendants argue they chose the first option and that the community caretaking doctrine

9

permits this course of action.³ *Id.*

*Vargas* is readily distinguishable from the present matter. First, in *Vargas* the Third Circuit reviewed the District Court's grant of summary judgment on qualified immunity grounds against the plaintiff following discovery. 783 F.3d at 969. The present action remains at the motion to dismiss stage and discovery has not yet commenced. As a result, the Court accepts all of Plaintiff's well-pleaded facts as true in deciding the motion. Second, the FAC does not indicate why the officers arrived at Plaintiff's vehicle in the first place. Nothing in the FAC indicates that Defendants, like the officers in *Vargas*, were responding to a 911 call or other comparable situation that would support the community caretaking doctrine.

Finally, Defendants suggest that Plaintiff informed them that "she was suffering from a medical emergency" and her refusal to allow them to help necessitated the physical removal of Plaintiff from her vehicle. Def. Reply. at 5. Yet the FAC merely alleges that "Plaintiff informed the officers that she was suffering an allergic reaction and on her way to the hospital." FAC at ¶ 22. The allergic reaction was limited to swelling on a portion of one of Plaintiff's fingers. *Id.* at ¶ 13. Such circumstances do not appear to constitute a "medical emergency" for which a non-investigatory, warrantless seizure of Plaintiff was necessary in order to ensure public safety and/or the safety of Plaintiff. In other words, the factual allegations, viewed in the light most favorable to the Plaintiff at this stage, do not "show that the actions of [the officers] were reasonable."

---

³ Defendants further assert that "New Jersey law enforcement officers have a duty to take a person into custody when faced with circumstances like those in this case." Def. Reply. at 5 (citing N.J.S.A. 30:4-27.6). However, N.J.S.A. 30:4-27.6 is inapposite. The statute provides, in relevant part, that a "law enforcement officer shall take custody of a person and take the person immediately and directly to a screening service if[ ] . . . [o]n the basis of personal observation, the law enforcement officer has reasonable cause to believe that the person is in need of involuntary commitment to treatment[.]" N.J.S.A. 30:4-27.6(a). Nothing in the FAC suggests that Defendants had reasonable cause to believe that Plaintiff was in need of involuntary commitment.

*Vargas*, 783 F.3d at 972. Therefore, although further development of this case may support the reasonableness of Defendants' conduct, the Court rejects Defendants' argument that the community caretaking doctrine entitles them to qualified immunity based on the current record.

Plaintiff alleges that she was seized by physical force. FAC at ¶ 24. As noted, the limited factual record before the Court does not suggest the seizure was reasonable under the community caretaking doctrine. Accordingly, Plaintiff satisfies the first element of her false arrest and false imprisonment claims.

As to the second element of Plaintiff's false arrest and false imprisonment claims, "probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been committed or is being committed by the person to be arrested." *Reedy*, 615 F.3d at 211 (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). Here, the FAC does not suggest that Defendants' reasonably believed that Plaintiff had committed or was committing a criminal offense. Defendants make no argument regarding their knowledge of any facts or circumstances that would reasonably lead them to this belief. In fact, Defendants' invocation of the community caretaking doctrine necessarily prevents the Court from finding that Defendants acted with the reasonable belief that Plaintiff had committed or was committing an offense. Accordingly, Plaintiff satisfies the second element of her false arrest and false imprisonment claims.

Because Plaintiff has satisfied both elements of her false arrest and false imprisonment claims, she has sufficiently alleged that "there is [a] wrong to address." *James*, 700 F.3d at 679. Therefore, Plaintiff satisfies the first prong in the qualified immunity analysis at the pleading stage with respect to these claims.

### 2. Plaintiff's Excessive Force Claim (Count III)

As with false arrest and false imprisonment claims, a claim that a law enforcement officer used excessive force "in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989). "To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' has occurred and that it was unreasonable." *Estate of Smith v. Marasco*, 318 F.3d 497, 515 (3d Cir. 2003) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)). Determining the reasonableness of the force used requires a court to balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)) (internal quotation marks and citations omitted). The use of force must be "objectively unreasonable" and factors to consider in this analysis include the following:

> [T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight, *see Graham*, 490 U.S. at 396, as well as the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of person with whom the police officers must contend at one time, *see Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997).

*Estate of Smith*, 318 F.3d at 515.

Here, Plaintiff sufficiently states a claim for excessive force. Plaintiff had not committed and was not in the process of committing a crime, nor is there any indication Plaintiff herself is violent or dangerous. Plaintiff was not armed, and the officers did not have to contend with other individuals other than Plaintiff. Although further development of the factual record may prove otherwise, the swelling on Plaintiff's finger and her indication that she was going to the hospital

because of an allergic reaction do not suggest Plaintiff was a threat to the officers or others. Additionally, while Plaintiff may not have cooperated with Defendants, she allegedly did not know that Defendants were police officers. FAC at ¶ 20. Further, as Defendants themselves argue, Defendants sought to seize Plaintiff for non-investigatory purposes pursuant to the community caretaking doctrine. Def. Br. at 24-25. This lends further support to the conclusion that the "nature and quality of the intrusion" against Plaintiff–forcing down Plaintiff's window, cutting her seatbelt, and pulling Plaintiff out of her vehicle by her hair, FAC at ¶ 24, outweigh the "countervailing governmental interests at stake"–the purported need to seize an individual suffering from an allergic reaction and transporting them to the hospital. *Graham*, 490 U.S. at 396. Accordingly, Plaintiff sufficiently alleges that Defendants' use of force was "objectively unreasonable" under the circumstances. *Estate of Smith*, 318 F.3d at 515.

It bears repeating that discovery may uncover proof that Defendants used a reasonable amount of force under the circumstances (or that Defendants did not use the force alleged). Based on the limited allegations currently before the Court and the Court's obligation to accept Plaintiff's factual allegations as true, however, the Court finds Plaintiff has sufficiently alleged that "there is [a] wrong to address." *James*, 700 F.3d at 679. Therefore, Plaintiff satisfies the first prong in the qualified immunity analysis at the pleading stage with respect to her excessive force claim.

### B. Whether the Rights at Issue were "Clearly Established"

A clearly established right is one that is "sufficiently clear 'that every reasonable official would have understood that what he is doing violates that right.'" *Reichle*, 566 U.S. at 664 (quoting *al-Kidd*, 563 U.S. at 741). The second prong of the qualified immunity analysis "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier*, 533 U.S. at 206). An officer will not be subjected to the

burdens of litigation "[i]f the law at [the time of the defendant's allegedly unlawful conduct] did not clearly establish that the officer's conduct would violate the Constitution[.]" *Id.* While a case directly on point is not required to clearly establish a right, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741; *see also Kedra v. Schroeter*, 876 F.3d 424, 450 (3d Cir. 2017) ("We typically look to Supreme Court precedent or a consensus in the Courts of Appeals to give an officer fair warning that his conduct would be unconstitutional."). In other words, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Furthermore, courts should not "define clearly established law at a high level of generality[,]" but rather determine "whether the violative nature of particular conduct is clearly established." *al-Kidd*, 563 U.S. at 742 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is established."). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201) (internal quotation marks omitted).

In *Brosseau*, which involved an excessive force claim based upon a police shooting of a suspect fleeing by car, the Ninth Circuit denied qualified immunity because the officer had violated the clearly established rule that "deadly force is only permissible where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Haugen v. Brosseau*, 339 F.3d 857, 873 (9th Cir. 2003). The Supreme Court reversed, holding that the Ninth Circuit applied a "general" test for excessive force. *Brosseau*, 543 U.S. at 199. Instead, according to the Supreme Court, the Ninth Circuit should have asked whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the "'situation

[she] confronted': whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." *Id.* at 199-200. The Supreme Court concluded that the officer was entitled to qualified immunity because none of the court of appeals cases cited by the parties "squarely governs the case here." *Id.* at 201.

Further guidance on the required degree of specificity is found in *Anderson*. There, the lower court denied qualified immunity because the plaintiff had the clearly established "right to be free from warrantless searches of one's home unless the searching officers have probable cause and there are exigent circumstances." *Anderson*, 483 U.S. at 640. The Supreme Court held that the lower court should have asked whether "the circumstances with which [the officer] was confronted . . . constitue[d] probable cause and exigent circumstances." *Id.* at 640-41. Without first addressing that question, the Supreme Court observed, the principle that warrantless searches without probable cause and exigent circumstances violate the Fourth Amendment did not clearly establish that the officer's search was unlawful. *Id.* at 641.

Thus, the question this Court must address is whether a reasonable officer in Defendants' position would have understood that the Fourth Amendment prohibited their conduct in the situation they confronted: whether to forcibly seize an individual in a parked vehicle who was suffering from an allergic reaction, intending to travel to the hospital, and refusing[4] the officers' directions (with at least one of the officers not in police uniform and failing to identify herself as a police officer).

Defendants argument on this prong is not entirely clear. Defendants argue, in conclusory fashion, that there is no clear precedent from the United States Supreme Court nor a robust

---

[4]Or at least refusing in part. Plaintiff indicates that she did roll down a few inches in response to DeSantis' command to roll down the window.

consensus from the circuits, that "clearly establishes that the Officer Defendants actions here violated the Fourth Amendment." Def. Br. at 18. As a result, the Court reviews the second prong as to the community caretaking doctrine and then turns to the Fourth Amendment in general.

As noted, the community caretaking doctrine permits the physical seizure of an individual for non-investigatory purposes in order to ensure public safety and/or the safety of the Plaintiff. *See, e.g., King*, 990 F.2d at 1560; *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992); *Winters*, 254 F.3d at 764; *Vargas*, 783 F.3d at 972. However, an individual's Fourth Amendment rights "are not eviscerated simply because a police officer may be acting in a noninvestigatory [sic] capacity for 'it is surely anomalous to say that the individual . . . is fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.'" *King*, 990 F.2d at 1560 (quoting *Camara v. Mun. Court of City & Cty. of S.F.*, 387 U.S. 523, 530 (1967)). As a result, the Court must address whether Defendants, "even if [their conduct was] constitutionally deficient, reasonably misapprehend[ed]" that the community caretaking doctrine applied here. *Brosseau*, 543 U.S. at 198.

Based on the allegations in the FAC, the Court cannot find that Defendants reasonably misapprehended the community caretaking doctrine. Plaintiff was in a parked car, was complaining of an allergic reaction, was indicating that she was traveling to the hospital, and was (at least initially) responding to DeSantis, who did not identify herself as a police officer and who was not in uniform. The FAC does not indicate that Plaintiff was in distress or was acting in a manner that was threatening to herself or others. The FAC also does not reference any other emergent situation or circumstances.

As to the Fourth Amendment in general, the FAC does not contain factual allegations from which the Court can conclude that Defendants reasonably misapprehended probable cause to arrest

or reasonably misapprehended their right to use the alleged force. This conclusion does not mean that Defendants acted unreasonably so as to prevent Defendants from asserting qualified immunity at a later stage of the litigation. *See Janowski*, 259 F. Supp. 3d at 126. However, because "qualified immunity will be upheld on a 12(b)(6) motion only when the immunity is established on the face of the complaint[,]" *Thomas*, 463 F.3d at 291, the Court finds that Plaintiff satisfies the second prong in the qualified immunity analysis such that her claims survive a motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's FAC pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED in part and DENIED in part**. The motion is granted as to the Defendants in their official capacities. The motion is denied as to qualified immunity. An appropriate Order accompanies this Opinion.

Dated: September 5, 2019

John Michael Vazquez, U.S.D.J.